UNITED STATES DISTRICT COURT

FOR THE DISTRICT EASTERN OF WASHINGTON

| | |
|---|---|
| CHRISTOPHER ANTHONY GARCIA,<br><br>                    Plaintiff,<br><br>v.<br><br>CAROLYN W. COLVIN,<br>Commissioner of Social Security Administration,       Defendant. | Case No. 2:12-cv-03032-LMB<br><br>**MEMORANDUM DECISION AND ORDER** |

This action is before the Court on Petitioner Christopher A. Garcia's Petition for Review (Dkt. 1), seeking reversal of the Social Security Administration's final decision to deny disability benefits, and the parties cross-motions for summary judgment. (Dkts. 16, 18). This action is brought pursuant to 42 U.S.C. § 405(g). After carefully reviewing the record and otherwise being fully advised, the Court enters the following Memorandum Decision and Order denying the relief sought in Garcia's Petition for Review.

## ADMINISTRATIVE PROCEEDINGS

On February 28, 2008, Garcia ("Petitioner" or "claimant") applied for Social Security Disability Insurance Benefits, alleging a disability onset date of December 31, 2004, when he was 29 years old. (AR 118). Garcia previously filed an application for

benefits on October 27, 2006, which was denied upon initial determination on December 18, 2006.  Garcia's February 2008 application reopened the 2006 determination for the purpose of determining if good cause exists for reopening the initial claim.  Administrative Law Judge ("ALJ") Moira Ausems conducted a video hearing on March 19, 2010, with Garcia appearing from Yakima, Washington and Ausems presiding over the proceedings from Spokane, Washington.  Petitioner was informed of the right to be represented by an attorney, but choose to proceed without the assistance of an attorney or other representative. (AR 102) An impartial vocational expert, Scott Whitmer, and Petitioner's wife, Maria Garcia, also appeared.  At the time of the hearing, Petitioner had past relevant work as a courtesy clerk at several grocery stores, and as a caregiver for a family member.  (AR 19).

On July 30, 2010, the ALJ issued her decision denying Petitioner's claim for disability.  (AR 13-28).  Petitioner timely requested review by the Appeals Council, which ultimately upheld the determination of the ALJ on March 3, 2011, making the denial the final determination of the Commissioner. (AR 1-4) In denying Petitioner's claim, the Commissioner determined that Petitioner was not disabled within the meaning of the Social Security Act.

## DISCUSSION

### A.    Standard of Review

To be upheld, the Commissioner's decision must be supported by substantial evidence and based on proper legal standards.  42 U.S.C. § 405(g); *Matney ex. rel.*

*Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th Cir. 1992); *Gonzalez v. Sullivan*, 914 F.2d 1197, 1200 (9th Cir. 1990). Findings as to any question of fact, if supported by substantial evidence, are conclusive. 42 U.S.C. § 405(g). In other words, if there is substantial evidence to support the ALJ's factual decisions, they must be upheld, even when there is conflicting evidence. *Hall v. Sec'y of Health, Educ. & Welfare*, 602 F.2d 1372, 1374 (9th Cir. 1979).

"Substantial evidence" is defined as such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Tylitzki v. Shalala*, 999 F.2d 1411, 1413 (9th Cir. 1993); *Flaten v. Sec'y of Health & Human Servs.*, 44 F.3d 1453, 1457 (9th Cir. 1995). The standard requires more than a scintilla but less than a preponderance, *Sorenson v. Weinberger*, 514 F.2d 1112, 1119 n. 10 (9th Cir.1975); *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989), and "does not mean a large or considerable amount of evidence." *Pierce v. Underwood*, 487 U.S. 552, 565 (1988).

With respect to questions of fact, the role of the Court is to review the record as a whole to determine whether it contains evidence that would allow a reasonable mind to accept the conclusions of the ALJ. *See Richardson*, 402 U.S. at 401; *see also Matney*, 981 F.2d at 1019. The ALJ is responsible for determining credibility and resolving conflicts in medical testimony, *Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984), resolving ambiguities, *see Vincent ex. rel. Vincent v. Heckler*, 739 F.2d 1393, 1394-95 (9th Cir. 1984), and drawing inferences logically flowing from the evidence, *Sample v.*

*Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982). Where the evidence is susceptible to more than one rational interpretation in a disability proceeding, the reviewing court may not substitute its judgment or interpretation of the record for that of the ALJ. *Flaten*, 44 F.3d at 1457; *Key v. Heckler*, 754 F.2d 1545, 1549 (9th Cir. 1985).

With respect to questions of law, the ALJ's decision must be based on proper legal standards and will be reversed for legal error. *Matney*, 981 F.2d at 1019. The ALJ's construction of the Social Security Act is entitled to deference if it has a reasonable basis in law. *See id*. However, reviewing federal courts "will not rubber-stamp an administrative decision that is inconsistent with the statutory mandate or that frustrates the congressional purpose underlying the statute." *Smith v. Heckler*, 820 F.2d 1093, 1094 (9th Cir. 1987).

There are three issues presented in the instant appeal: 1) whether the AJL properly considered the medical evidence; 2) whether the ALJ's finding that Garcia could perform past relevant work is supported by substantial evidence; and 3) if the ALJ properly identified specific jobs Garcia could perform, available in significant numbers in the national economy in light of his specific functional limitations.

## B. Administrative Procedure

In evaluating the evidence presented at an administrative hearing, the ALJ must follow a sequential process in determining whether a person is disabled in general (*see* 20 C.F.R. §§ 404.1520, 416.920) - or continues to be disabled (*see* 20 C.F.R. §§ 404.1594, 416.994) - within the meaning of the Social Security Act.

1.      **Five-Step Sequential Process**

The first step requires the ALJ to determine whether the claimant is engaged in substantial gainful activity ("SGA"). 20 C.F.R. §§ 404.1520(a)(4)(I), 416.920(a)(4)(I). SGA is defined as work activity that is both substantial and gainful. "Substantial work activity" is work activity that involves doing significant physical or mental activities. 20 C.F.R. §§ 404.1572(a), 416.972(a). "Gainful work activity" is work that is usually done for pay or profit, whether or not a profit is realized. 20 C.F.R. §§ 404.1572(b), 416.972(b). If the claimant has engaged in SGA, disability benefits are denied, regardless of how severe his physical/mental impairments are and regardless of his age, education, and work experience. 20 C.F.R. §§ 404.1520(b), 416.920(b). If the claimant is not engaged in SGA, the analysis proceeds to the second step. Here, the ALJ found that Petitioner had not engaged in SGA since December 18, 2006, the date of the prior final and binding determination. (AR 16). Petitioner does not dispute this finding.

The second step requires the ALJ to determine whether the claimant has a medically determinable impairment, or combination of impairments, that is severe and meets the duration requirement. 20 C.F.R. § 404.1520(a)(4)(ii), 416.920(a)(4)(ii). An impairment or combination of impairments is "severe" within the meaning of the Social Security Act if it significantly limits an individual's ability to perform basic work activities. 20 C.F.R. §§ 404.1520(c), 416.920(c). An impairment or combination of impairments is "not severe" when medical and other evidence establish only a slight abnormality or a combination of slight abnormalities that would have no more than a

minimal effect on an individual's ability to work.  20 C.F.R. §§ 404.1521, 416.921.  If the claimant does not have a severe medically determinable impairment or combination of impairments, disability benefits are denied.  20 C.F.R. §§ 404.1520(c), 416.920(c).

At this step, the ALJ found that Petitioner had the following severe impairments: lumbar degenerative disc disease status post two surgeries, carpal tunnel syndrome status post bilateral carpal tunnel release, seizure disorder, obstructive sleep apnea, obesity, generalized anxiety disorder, and a possible learning disorder.  (AR 16).  Petitioner does not dispute this finding by the ALJ.

The third step requires the ALJ to determine the medical severity of any impairments; that is, whether the claimant's impairments meet or equal a listed impairment under 20 C.F.R. Part 404, Subpart P, Appendix 1.  20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii).  If the answer is yes, the claimant is considered disabled under the Social Security Act and benefits are awarded.  20 C.F.R. §§ 404.1520(d), 416.920(d).  If the claimant's impairments neither meet nor equal one of the listed impairments, the claimant's case cannot be resolved at step three and the evaluation proceeds to step four.  *Id.*

Here, the ALJ concluded that Garcia "does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments.  (AR 16).  Garcia disagrees with this determination.

The fourth step of the evaluation process requires the ALJ to determine whether the claimant's residual functional capacity ("RFC") is sufficient for the claimant to

perform past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). An individual's RFC represents their ability to do physical and mental work activities on a sustained basis despite limitations from his impairments. 20 C.F.R. §§ 404.1545, 416.945. Likewise, an individual's past relevant work is work performed within the last 15 years or 15 years prior to the date that disability must be established; also, the work must have lasted long enough for the claimant to learn to do the job and be engaged in substantial gainful activity. 20 C.F.R. §§ 404.1560(b), 404.1565, 416.960(b), 416.965.

After considering the evidence presented in the administrative record and at the hearing, the ALJ determined that the Petitioner has the residual functional capacity to perform light work as defined in 20 C.F.R. § 404.1567(b), with the exception that he has problems with math. (AR 18). The ALJ further concluded that Petitioner is able to perform past relevant work as a caregiver. (AR 26-27). However, the ALJ found that because, "there would be a reduced number of [caregiver] jobs available at the light exertion level," the ALJ proceeded to the fifth and final step of the process, as an alternative finding. *See* 20 C.F.R. § 404.1520(e) (AR 26–28).

When the claim reaches step five, the ALJ considers if the claimant is able to do any other work. 20 C.F.R. § 404.1520(f)(1). On the fifth step, the burden shifts to the ALJ. *Id.* If the ALJ finds that claimant cannot work, then the claimant is "disabled" and entitled to disability insurance benefits. *Id.* However, if the ALJ determines that the claimant can work, the ALJ must also establish that there are a significant number of jobs in the national economy that claimant can do in his or her condition. *Id.* "If the

Commissioner cannot meet this burden, then the claimant is "disabled" and therefore entitled to disability benefits." *Lounsburry v. Barnhart*, 468 F.3d 1111, 1114 (9th Cir. 2006). The ALJ can meet this burden two ways. *Id.* First, the ALJ can solicit the testimony of a vocational expert, or second, the ALJ can reference the Medical-Vocational Guidelines at 20 C.F.R. pt. 404, subpt. P, app. 2. *Id*.

The ALJ, based on the testimony of a vocational expert, concluded that, "considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform." (AR 27). Specifically, the ALJ determined that Petitioner is "able to perform the requirements of representative occupations such as:" 1) cafeteria counter attendant, with over 15,000 jobs in Washington, Idaho, Oregon region, and 460,000 in the nation; and 2) parking lot cashier, with 2,000 jobs in Washington, Idaho, Oregon region, and 113,000 in the nation. (AR 28). The ALJ based this determination on the testimony of a vocational expert, and went further to find "that even if [Petitioner] were limited to light exertion work as described … but with a sit/stand option, the claimant could still perform work as a parking lot cashier [and] weight tester. (AR 28).

**B.    Analysis**

Petitioner seeks judicial review of the denial of benefits, arguing that the ALJ erred in three respects. First, he argues that the ALJ wrongly rejected the opinion of Dr. Daniels, one of Petitioner's treating doctors. (Petitioner's Brief, Dkt. 17 at 14-16). Second, he claims that the ALJ failed to conduct a proper RFC determination because he

"failed to include all of claimant's limitations, … failed to identify the specific demands of claimant's past relevant work as caregiver," an failed to properly evaluate "claimant's specific functional limitations." (Id. at 16-18). Finally, he submits that the AJL failed to establish that there are a substantial number of jobs in the national economy suitable for Petitioner. (Id. at 18-19).

In response, the government argues that the ALJ's determination is supported by substantial evidence in the record.  Respondent directly disagrees and attempts to refute all of Petitioner's arguments.  Specifically, Respondent argues that Petitioner did not establish that he met his burden of showing he was disabled under the Act.  Respondent asserts that the ALJ properly weighed all of the medical evidence and Petitioner's own testimony, giving adequate reasons for rejecting any opinions rendered.  (Respondent's Brief, Dkt. 19 at 6-8).  Regarding step four, Respondent points out that "the ALJ had ample evidence of the duties of Plaintiff's past relevant work and his ability to do that work." (Id. at 10). Further, in spite of finding Garcia able to perform past relevant work, Respondent argues "the ALJ went over and beyond her duty and called a vocational expert to testify."  (Id.).  Finally, Respondent argues that Petitioner's argument regarding the number of jobs in the economy is without merit because the ALJ properly relied on the testimony of the vocational expert.  (Id. at 13.)  Respondent concludes that the ALJ's conclusion was based on substantial evidence and should be affirmed (Id.)

## 1.    Weight of Medical Evidence

In his application for benefits, Petitioner presented evidence Dr. David C. Danials, Petitioner's treating physician. Petitioner argues the ALJ improperly rejected the opinion of Dr. Daniels that Petitioner be limited to sedentary exertion work. Petitioner argues that the ALJ "summarily rejected Dr. Daniels assessments without providing adequate reasons." (Petitioner's Brief, Dkt. 17 at 15). Petitioner acknowledges that the ALJ gave reasons for rejecting the opinions, but disputes the reasons given as invalid or without merit. (Id.)

Respondent contends that the ALJ did consider Daniels' opinion, but argues the portions of Daniels' opinion that Petitioner claims were improperly rejected were only done so for clear and convincing reasons. (Respondent's Brief, Dkt. 19 at 6). Further, Respondent argues that the ALJ thoroughly and properly explained his evaluations of all the medical evidence, and analysis given, and treatment of the other doctors' testimony. Respondent explains that the ALJ found that Dr. Daniels' opinions were not supported by substantial treatment notes; that he was not specially trained to give opinions regarding Garcia's surgical progress or mental health; and that Dr. Daniels' opinion regarding carpal tunnel was "given only two months after [surgery] …, so these limitations would likely have been temporary. (Id. at 7-8).

In evaluating medical opinions, the case law and regulations distinguish among the opinions of three types of physicians: (1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant (non-examining physicians).

*See* 20 C.F.R. §§ 404.1502, 416.927; *see also Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). Generally, the opinions of treating physicians are given greater weight than those of other physicians, as treating physicians have a greater opportunity to observe the claimant. *Smolen v. Chater*, 80 F.3d 1273, 1285 (9th Cir. 1996); *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989).

While a treating physician's opinion is normally entitled to deference, it is not necessarily determinant as to the question of disability. *Rodriguez v. Bowen*, 876 F.2d 759, 761–62 (9th Cir. 1989). A lack of objective medical findings, treatment notes, and rationale to support a treating physician's opinion are all sufficient reasons for rejecting an opinion. *Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001).

After reviewing the record and the files of Dr. Daniels, the Court finds, and thus concludes, that the ALJ gave the opinions of Petitioner's treating doctor, Dr. Daniels, proper consideration. The ALJ provided a thorough analysis of Petitioner's medical records including interpretation, weight given and adequate support for those decisions. Specifically, from the Court's own review of the record, Dr. Daniels' opinions regarding Garcia's limitations were not supported by substantial treatment notes. *see Connett v. Barnhart,* 340 F.3d 871, 875 (9th Cir.2003) (doctor's opinion properly rejected when treatment notes "provide no basis for the functional restrictions he opined should be imposed"); *Thomas v. Barnhart,* 278 F.3d 947, 957 (9th Cir.2002) ("[t]he ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory, and inadequately supported by clinical findings"); *see also Batson v.*

*Commissioner of Social Security Administration,* 359 F.3d 1190, 1195 (9th Cir.2004) (noting that "an ALJ may discredit treating physicians' opinions that are conclusory, brief, and unsupported by the record as a whole, ... or by objective medical findings") Furthermore, the ALJ factored into his evaluation that Dr. Daniels not a specialist. While this fact alone is not a reason to reject his assessment, it is true that more weight generally is given to the opinion of a specialist about issues within that specialist's area of expertise than to the opinion of a source who is not a specialist. 20 C.F.R. §§ 1527(c)(5) and 416.927(c)(5) ("We generally give more weight to the opinion of a specialist about medical issues related to his or her area of specialty than to the opinion of a source who is not a specialist."). That Dr. Daniels is not a specialist it is certainly a factor that the ALJ could properly consider in affording less weight to that portion of his opinion.

     Finally, Garcia claims that "there are no inconsistencies between Dr. Daniels' assessments and the claimant's activities of daily living," thus showing error by the ALJ insofar as that as a reason for giving little weight to Dr. Daniels' opinion. However, this contention is not supported by record evidence. For example, prior to his carpal tunnel release, Garcia was able to play video games most of the day, and Dr. Daniels' opinion regarding the limiting effects of Garcia's carpal tunnel were given prior to his recovery from the procedure. Given Garcia's previous positive response to the release procedure, it is probable to expect a full recovery from those limiting effects. According to the record, Garcia is able to function socially and manage his finances. Furthermore, Dr. Daniels' opinions were based largely on Garcia's subjective pain testimony, which appeared to be

**MEMORANDUM DECISION AND ORDER - 12**

worse at periods when he was applying for benefits and better at times he was not. ((AR 20) ("claimant has reported increased symptomatology at times when being evaluated for GAU benefits, suggesting he has a tendency to exaggerate his symptoms and limitations in an effort to obtain benefits")). The Ninth Circuit has made it clear that "the ALJ may reject the claimant's testimony regarding the severity of [his] symptoms only if the ALJ makes specific findings stating clear and convincing reasons for doing so," and he "must state specifically which symptom testimony is not credible and what facts in the record lead to that conclusion." *Smolen v. Chater*, 80 F.3d 1273, 1284 (9th Cir. 1996); *see also Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998).

A court must uphold the determination of the commissioner if the findings are "supported by inferences reasonably drawn from the record." *Batson v. Commissioner*, 359 F.3d 1190, 1193 (9th Cir. 2004). This is the case here, even when there is "more than one rational interpretation" of the evidence. *Id.* Here, the ALJ properly supported his findings, including adequate consideration of all medical evidence. Accordingly, the determination of the Commissioner will not be disturbed or overruled on this basis.

### 2. Residual Functional Capacity Determination

Petitioner argues that the ALJ erred in the RFC finding by failing to consider all of Garcia's impairments and limitations, the specific demands of his past relevant work as caregiver, and the intersection of Garcia's impairments with those specific demands. Garcia alleges that the ALJ did not consider a sedentary work restriction, thus eliminating Garcia's ability to return back to that past relevant work.

As discussed above, however, the ALJ did not err in his treatment of the opinion of Dr. Daniels on which Garcia's arguments are primarily premised. The ALJ considered Garcia's limitations and questioned the vocational expert regarding "light exertion level" caregiver jobs only. (AR 27). Upon learning from the expert that there would be a reduced number of light exertion level jobs available, the ALJ provided an alternative finding and proceeded to a step five analysis. As the Ninth Circuit has held, the Court will not reverse where, as here, "the ALJ took into account those limitations for which there was record support that did not depend on [the claimant's] subjective complaints." *Bayliss v. Barnhart*, 427 F.3d 1211, 1217 (9th Cir. 2005) (upholding ALJ decision despite failure to perform function-by-function assessment and failure to consider drowsiness or reactions to stress); see also *Stubbs-Danielson v. Astrue*, 539 F.3d 1169, 1174 (9th Cir. 2008) (finding that the ALJ adequately captured limitations to "concentration, persistence, or pace" with a restriction to "simple tasks").

Put simply, the RFC finding by the ALJ is adequately supported by the record. Accordingly, it will not be disturbed on this appeal.

### 3. Vocational Expert

Petitioner claims that the ALJ erred in relying on the opinion of the vocational expert because the ALJ provided them with an "incomplete hypothetical" because it does not reflect all of the claimant's limitations.

Respondent argues that the ALJ properly relied on the testimony of the vocational expert, further pointing out that the ALJ correctly presented hypothetical questions that

reflected Petitioner's actual residual functional capacity.  Respondent concludes that the hypothetical was based on substantial evidence in the record.

An "ALJ can call upon a vocational expert to testify as to: (1) what jobs the claimant, given his or her residual functional capacity, would be able to do; and (2) the availability of such jobs in the national economy." *Tackett v. Apfel*, 180 F.3d 1094, 1011 (9th Cir. 1999).  In so doing, the ALJ poses hypothetical questions to the vocational expert that "set out all of the claimant's impairments" for the vocational expert's consideration." *Id*. (*quoting Gamer v. Secretary of Health and Human Servs.,* 815 F.2d 1275, 1279 (9th Cir. 1987)). The ALJ's hypothetical depiction of the claimant's disability must be accurate, detailed, and supported by the medical record. *Id*. The vocational expert "translates these factual scenarios into realistic job market probabilities by testifying on the record to what kinds of jobs the claimant still can perform and whether there is a sufficient number of those jobs available in the claimant's region or in several other regions of the economy to support a finding of not disabled." *Id*. (internal quotations omitted).

At the hearing, the ALJ described the following limitations to the vocational expert for consideration: An individual with the claimant's past relevant work, including his trouble with math, limitations with regard to lifting, carrying, standing, sitting, pushing, pulling, climbing of ramps and stairs, and balancing.  (AR 66-67). The ALJ also asked the vocational expert to consider limitations in reaching, handling, fingering and feeling on a frequent basis as well as exposure to hazards and limitations of social

functioning. (Id.). With regard to the caregiver position, the ALJ inquired about potions below medium exertion level, and also hypothesized about beyond past relevant work. (Id.)

In this case, the ALJ appropriately presented Petitioner's case to the vocational expert. The expert properly evaluated the hypothetical, buttressing his conclusions with full explanations supported by evidence. Accordingly, the ALJ's reliance on the opinion of the vocational expert was proper and the determination of the Commissioner will not be disturbed on this ground.

**C.  Conclusion**

The Court concludes that the Commissioner's determination that Petitioner is not disabled within the meaning of the Social Security Act is supported by substantial evidence in the record and is based upon an application of proper legal standards. Accordingly, the Court will not substitute its interpretation or judgment for that of the ALJ in reaching his decision and the Commissioner's decision is upheld.

**ORDER**

Based on the foregoing, the decision of the Commissioner is affirmed; Petitioner's Motion for Summary Judgment (Dkt. 16) is DENIED; Respondent's Motion for Summary Judgment (Dkt. 18) is GRANTED; and this action is DISMISSED in its entirety with prejudice.

DATED: January 3, 2014

Honorable Larry M. Boyle
U. S. Magistrate Judge